UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANICE E. MORRIS,

        Plaintiff,

v.

        Case Number 10-11588
        Honorable David M. Lawson

METROPOLITAN LIFE INSURANCE
COMPANY and JOYCE M. SANDIGE,

        Defendants.
_____/

**OPINION AND ORDER GRANTING METROPOLITAN LIFE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT, DENYING JOYCE SANDIGE'S MOTION FOR SUMMARY JUDGMENT, GRANTING DEFENDANT SANDIGE'S MOTION FOR LEAVE TO FILE COUNTERCLAIM, DENYING DEFENDANT SANDIGE'S MOTION FOR LEAVE TO REPLY TO PLAINTIFF'S ANSWER TO MOTIONS FOR SUMMARY JUDGMENT, AND SCHEDULING STATUS CONFERENCE**

The contest in this case is over a death benefit from a policy of insurance on the life of Willard W. Morris. The insurance policy was provided to Morris as an employee benefit when he was employed by General Motors Corporation, and therefore it is governed by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, *et seq.* The plaintiff, Janice Morris, was the decedent's wife of five months, and claims a right to the death benefit as his widow. However, Willard designated his former wife, Joyce M. Morris, now Joyce Sandige, as his beneficiary in 1976, and he never changed that designation after the couple divorced in 2007. Ms. Sandige claims a right to the death benefit by virtue of that designation, even though the divorce judgment purported to extinguish the interests of the parties in each other's life insurance policies. The case is now before the Court on cross motions for summary judgment. The Court has reviewed the submissions of the parties and finds that the relevant law and facts have been set forth in the

motion papers and that oral argument will not aid in the disposition of the motion. Accordingly, it is **ORDERED** that the motion be decided on the papers submitted. *See* E.D. Mich. LR 7.1(e)(2). The Court finds that although the judgment of divorce on which the plaintiff relies as terminating defendant Sandige's interest in the life insurance policy proceeds is preempted by ERISA, the proceeds to be paid to Sandige as the named beneficiary must be impressed with a constructive trust, and allocation may not occur until the Court conducts a hearing to determine the equities under all the circumstances. Therefore, defendant Metropolitan Life Insurance Company's (MetLife) motion for summary judgment will be granted, and defendant Sandige's motion for summary judgment will be denied.

I.

Willard W. Morris participated in an employee welfare benefit plan maintained by his employer General Motors. Defendant MetLife is the plan administrator and is responsible for processing claims for benefits under the plan. On July 6, 1976, two days after the country celebrated its bicentennial, Willard filed a writing in accordance with the plan provisions designating his wife at the time, Joyce M. Morris, as his beneficiary. As noted above, she is now known as Joyce Sandige.

The plan document naming Joyce Sandige sole beneficiary is the last beneficiary designation on file with the plan. Thirty years later, Willard and Joyce divorced. The divorce became final on October 31, 2007, when a judgment was filed in the Oakland County, Michigan circuit court. The judgment contained the following language, as required by Michigan law:

> IT IS FURTHER ORDERED that any rights of either party in any policy or contract of life, endowment or annuity insurance of the other as beneficiary are hereafter extinguished unless specifically preserved by this Judgment.

-2-

Willard Morris married plaintiff Janice Morris on June 21, 2009. Willard died five months later on December 8, 2009. Janice Morris was appointed personal representative of the decedent's estate. At the time of Willard's death, Basic Group Life benefits in the amount of $5,635 and Optional Group Life benefits of $82,500 became payable under the Plan to the proper beneficiary.

On January 22, 2010, plaintiff Janice Morris forwarded her life insurance claim form to MetLife seeking payment of the life insurance proceeds. MetLife denied the plaintiff's claim on January 26, 2010 because Janice Morris was not the designated beneficiary to receive the plan benefits. On March 19, 2010, the plaintiff mailed MetLife a letter appealing the initial denial, referring to provisions in the consent judgment of divorce and contending that the plan benefits should be paid to the estate of Willard Morris. The plaintiff filed suit in the Oakland County, Michigan probate court before MetLife responded to the plaintiff's letter. On April 20, 2010, MetLife, with the concurrence of defendant Sandige, removed this action to this Court.

Defendant MetLife has filed a motion for summary judgment seeking a declaration that its obligation is solely to pay the insurance death benefit to the beneficiary designated by the plan documents, that is Joyce Sandige, formerly Joyce Morris, affirming the decision of the plan administrator. The plaintiff opposes the motion on two grounds: that the judgment of divorce constitutes a valid order under ERISA extinguishing Ms. Sandige's interest in the insurance proceeds; and if the divorce judgment does not govern, equitable principles require that the proceeds be paid to the decedent's estate despite a superior legal claim by Ms. Sandige. Defendant Sandige has filed a motion for summary judgment to affirm the decision of the plan administrator. She also has moved for leave to file a counterclaim seeking a declaration that the insurance proceeds belong

entirely to her. The proposed counterclaim presumably is in response to the plaintiff's suggestion that equity requires the funds to be paid to the plaintiff.

II.

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A trial is required only when "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Where the facts are mostly settled, and the question before the court is purely a legal one, the summary judgment procedure is well suited for resolution of the case. *See Cincom Sys., Inc. v. Novelis Corp.*, 581 F.3d 431, 435 (6th Cir. 2009).

When a party contends facts are in dispute, the party bringing the summary judgment motion has the initial burden of informing the court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002). The party opposing the motion then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. If the non-moving party, after sufficient opportunity for discovery, is

unable to meet his burden of proof, summary judgment is clearly proper. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Under section 404 of ERISA, a plan administrator must "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . in accordance with the documents and instruments governing the plan. . . ." 29 U.S.C. § 1104(a)(1)(D); *see Kennedy v. Plan Adm'r for DuPont Sav. and Inv. Plan*, 129 S. Ct. 865, 875 (2009) (holding that the plan administrator must "act in accordance with the documents and instruments governing the plan . . . and [ERISA] provides no exemption from this duty when it comes time to pay benefits"). The plan documents name defendant Joyce Sandige as the beneficiary entitled to the death benefit on Willard Morris' life insurance policy. No alternate payee is designated. The first question that must be addressed, therefore, is the effect of the state divorce judgment on the beneficiary designation on file with MetLife.

That question is well settled. Title 29 U.S.C. § 1144(a) states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. *Egelhoff v. Egelhoff*, 532 U.S. 141 (2001). A state law "relates to" a plan "if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983). "[A] state law may 'relate to' a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect." *Met. Life Ins. Co. v. Pressley*, 82 F.3d 126, 129 (6th Cir. 1996) (quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990)). State law includes the state's common law. Therefore, to the extent that the plaintiff's complaint is based on Michigan's law of contracts, it cannot be sustained. *Met. Life Ins. Co. v. Taylor*, 481 U.S. 58, 62-63 (1987).

In *Egelhoff*, the Supreme Court held that a Washington state statute substantially similar to Michigan's statutory divorce insurance provision was expressly preempted by ERISA and was therefore ineffective to revoke the beneficiary designation of an ex-spouse on her former husband's employer-issued life insurance policy. 532 U.S. at 143. The Sixth Circuit has "explicitly and repeatedly held that state court divorce decrees purporting to affect the benefits payable from an ERISA plan are preempted." *Central States, S.E. & S.W. Areas Pension Fund v. Howell*, 227 F.3d 672, 676-77 (6th Cir. 2000) (citing cases).

The plaintiff argues that the divorce judgment should be read as a qualified domestic relations order (QDRO), which is excepted from section 1144(a). Section 1144(b)(7) states that "[s]ubsection (a) of this section shall not apply to qualified domestic relations orders (within the meaning of section 206(d)(3)(B)(i) [of this title, codified at 29 U.S.C. § 1056(d)(3)(B)(i)])." A QDRO is an order entered in a state domestic relations action that "assigns to an alternate payee the right to [] receive all or a portion of the benefits payable with respect to a participant under a plan." 29 U.S.C. § 1056(d)(3)(B)(i)(I).

The divorce judgment in this case does not qualify as a QDRO because it does not satisfy the statutory requirements. Section 1056(d)(3)(C) states:

> A domestic relations order meets the requirements of this subparagraph only if such order clearly specifies--
> (i) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,
> (ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined,
> (iii) the number of payments or period to which such order applies, and
> (iv) each plan to which such order applies.

29 U.S.C. § 1056(d)(3)(C). The order need only substantially comply with the statute, *see Met. Life Ins. Co. v. Marsh*, 119 F.3d 415, 422 (6th Cir. 1997), but the divorce judgment here meets none statute's specifications and amounts to no more than a general waiver, which is not a QDRO. *Kennedy*, 129 S. Ct. at 873 ("There is no QDRO for a simple waiver; there must be some succeeding designation of an alternate payee.").

That is all that needs to be said with respect to MetLife's motion for summary judgment. The plan administrator must act in accordance with the plan documents, and MetLife has no alternative but to pay the life insurance proceeds to the designated beneficiary, Joyce Sandige.

The question of Ms. Sandige's outright entitlement to the insurance proceeds is more complicated. MetLife must distribute the plan proceeds to her, but whether she is entitled to keep the funds is an entirely different matter. In *Central States, S.E. & S.W. Areas Pension Fund v. Howell*, the Sixth Circuit held that ERISA does not insulate a fund generated by an employee welfare plan, once distributed, from legal or equitable claims by non-plan beneficiaries. 227 F.3d at 678-79. In that case, the deceased husband changed the beneficiary designation on a life insurance policy issued as part of an ERISA welfare plan in violation of a state court injunction issued to preserve the status quo in a divorce case. The husband died while the divorce was pending, and the court of appeals held that ERISA required that the insurance policy proceeds be paid to the deceased's children by a former marriage, whom the husband had designated in the beneficiary change form, despite the state court order not to do so. However, the Court then stated:

> [T]here is no precedent binding on this Court on the issue of whether, once the beneficiary is determined, ERISA preempts all causes of action and possible remedies based upon state law that might be traced to the ERISA plan proceeds.

*Howell*, 227 F.3d at 678. The Court held that equitable claims relating to the parties competing for the fund, and not involving the plan administrator, are not preempted. Thus, "once the benefits of an ERISA employee welfare benefit plan have been distributed according to the plan documents, ERISA does not preempt the imposition of a constructive trust on those benefits." *Id*. at 678-79. The Court concluded that the "district court has the discretion to impose a constructive trust upon those benefits in accordance with applicable state law if equity so requires." *Id*. at 679.

The Supreme Court's recent decision in *Kennedy* does not change that rule, the Court having explicitly left the question open. *Kennedy*, 129 S. Ct. at 875 n.10 ("Despite our following answer to the question here, our conclusion that § 1056(d)(1) does not make a nullity of a waiver leaves open any questions about a waiver's effect in circumstances in which it is consistent with plan documents. Nor do we express any view as to whether the Estate could have brought an action in state or federal court against Liv to obtain the benefits after they were distributed. Compare *Boggs v. Boggs*, 520 U.S. 833, 853 (1997) ('If state law is not preempted, the diversion of retirement benefits will occur regardless of whether the interest in the pension plan is enforced against the plan or the recipient of the pension benefit'), with *Sweebe v. Sweebe*, 474 Mich. 151, 156-159, 712 N.W.2d 708, 712-713 (2006) (distinguishing *Boggs* and holding that 'while a plan administrator must pay benefits to the named beneficiary as required by ERISA,' after the benefits are distributed 'the consensual terms of a prior contractual agreement may prevent the named beneficiary from retaining those proceeds'); *Pardee v. Pardee*, 2005 OK CIV APP. 27, ¶¶ 20, 27, 112 P.3d 308, 313-314, 315-316 (2004) (distinguishing *Boggs* and holding that ERISA did not preempt enforcement of allocation of ERISA benefits in state-court divorce decree as 'the pension plan funds were no longer entitled to ERISA protection once the plan funds were distributed')."). In other

contexts, post distribution actions against a fund subject to ERISA have been sustained as well. *See Mackey v. Lanier Collection Agency and Serv., Inc.*, 486 U.S. 825, 831-32 (1988) (holding that once plan benefits have been paid to the beneficiary, ERISA does not prevent courts from subjecting the plan proceeds to a writ of garnishment).

Although the plaintiff makes an oblique reference in her complaint to her entitlement to the funds after distribution by the plan administrator, she did not seek a constructive trust, and she never filed a motion for affirmative relief in this case, despite the Court's direction in the scheduling order to do so. She suggests in her response to the summary judgment motions that imposition of a constructive trust is appropriate. Defendant Sandige has moved for leave to file a counterclaim to assert her absolute right to the funds, which the plaintiff opposes on futility grounds. Both contestants, therefore, contend that equity must dictate the proper distribution of the funds once they are paid over to the designated beneficiary by MetLife.

Equity permits the imposition of a constructive trust upon the funds in such similar circumstances. As this Court has explained,

> The Michigan Supreme Court has held that "a constructive trust is strictly not a trust at all, but merely a remedy administered in certain fraudulent breaches of trusts." *Blachy v. Butcher*, 221 F.3d 896, 905 (6th Cir. 2000) (quoting *Soo Sand & Gravel Co. v. M. Sullivan Dredging Co.*, 259 Mich. 489, 494, 244 N.W. 138, 140 (1932)). A constructive trust may be imposed upon a finding of fraud, concealment, misrepresentation, or any other circumstances that would render an unconscionable outcome or when an inequitable outcome would result. *Blachy*, 221 F.3d at 903-04. A constructive trust may also be imposed "where such trust is necessary to do equity or to prevent unjust enrichment. . . ." *Ooley v. Collins*, 344 Mich. 148, 158, 73 N.W.2d 464, 469 (1955). The trusts' "forms and varieties are practically without limit, being raised by courts of equity whenever it becomes necessary to prevent a failure of justice." *Butler v. Attwood*, 369 F.2d 811, 819 (6th Cir. 1966) (quoting *Kent v. Klein*, 352 Mich. 652, 658, 91 N.W.2d 11, 14 (1958)). The party wanting the constructive trust to be imposed has the burden of proof. *Kammer Asphalt Paving Co. v. East China Township Sch.*, 443 Mich. 176, 188, 504 N.W.2d 635, 642 (1993).

*Met. Life Ins. Co. v. Mulligan*, 210 F. Supp. 2d 894, 899 (E.D. Mich. 2002).

The factual and legal record in this case is not sufficiently developed to make the determinations whether a constructive trust should be imposed and how the funds should be allocated. Defendant Sandige may have a superior legal claim to the funds, and the estate may indeed have an equitable claim to some or all of the proceeds. The Court believes that the questions are best resolved once the parties frame the issues in their pleadings and present appropriate supporting facts.

### III.

The Court concludes that defendant MetLife must pay the death benefit proceeds to the beneficiary designated by the plan documents. However, issues remain with respect to the disposition of the funds thereafter.

Accordingly, it is **ORDERED** that defendant MetLife's motion for summary judgment [dkt #24] is **GRANTED**.

It is further **ORDERED** that MetLife shall pay into the Court's registry the proceeds of Basic Group Life and Optional Group Life insurance policies on the life of Willard W. Morris for the benefit of defendant Joyce M. Sandige. Upon payment of the funds to the Court, defendant MetLife shall have no further responsibility in the case and the complaint against it shall be **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that defendant Joyce M. Sandige's motion to affirm the administrator's decision [dkt #25] is **DENIED**.

It is further **ORDERED** that defendant Joyce M. Sandige's motion for leave to file a counterclaim [dkt #19] is **GRANTED**. The defendant may file her counterclaim **on or before November 30, 2010**.

It is further **ORDERED** that the plaintiff may file an amended complaint **on or before November 30, 2010**.

It is further **ORDERED** that counsel for the remaining parties shall appear for a status conference to discuss further case management deadlines on **December 1, 2010 at 10:00 a.m.**

It is further **ORDERED** that the defendants' motions for leave to respond to the plaintiff's answer to the motions for summary judgment [dkt #28, 29] are **DENIED as moot**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated: November 17, 2010

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 17, 2010.

s/Deborah R. Tofil  
DEBORAH R. TOFIL